UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br>　　　　v.<br><br>SHAWN PRIM,<br>　　　Defendant. | :<br>:<br>:　No. 5:17-cr-00078<br>:<br>:<br>: |

**O P I N I O N**
Motion for Compassionate Release, ECF No. 79 – Denied

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　　April 23, 2020
**United States District Judge**

**I.　　INTRODUCTION**

　　Defendant Shawn Prim is currently serving a 188-month sentence at FCI-Hazelton after pleading guilty to charges related to the theft and possession of stolen firearms. In light of the COVID-19 pandemic, Prim files the present Pro Se Emergency Motion for Compassionate Release. Prim asserts that his pre-existing medical conditions place him at a heightened risk for contracting COVID-19, and accordingly, Prim argues for early release. The Government opposes Prim's motion, asserting that Prim's release runs contrary to the policy statements of the United States Sentencing Commission and the factors enumerated in 18 U.S.C. § 3553(a).

　　Upon review of the relevant considerations, Prim's motion is denied.

**II.　　BACKGROUND**

　　Prim recruited Parrish Valentine and Lena Griffith, Prim's then-girlfriend, to burglarize a gun store with him. *See* Transcript of Change of Plea Hearing ("Plea N.T. __") 20:15-21, ECF No. 66; *see also id.* at 21:2-11. On May 29, 2016, the trio drove to a store, buying gloves, masks and tools for the burglary. *See id.* at 21:9-11. That same night, Prim, Valentine, and Griffith

burglarized a gun shop in Mount Joy Township, Pennsylvania. *See id.* at 21:12-16. Prim and Valentine entered the store, smashed the display cases, and took handguns from the display cases. *See id.* Griffith acted as the getaway driver. *See id.* at 21:14-19. All told, the trio took nine handguns, which they split amongst themselves. *See id.* at 21:20–22:2.

Prim provided one of the stolen handguns to his brother. *See* Transcript of Sentencing Hearing ("Sent. N.T. __") 41:9-11, ECF No. 68. Prim kept one of the stolen handguns for himself and sold some of them on the black market. *See* Plea N.T. 21:23–22:2. On June 1, 2016, Prim and Griffith led police on a high-speed chase; Griffith was driving the vehicle and Prim was a passenger. *See id.* at 21:24–22:2. During the pursuit, Prim threw his stolen handgun from the window of the car. *See id.*; *see also* 24:22-25.

On February 7, 2017, Prim was charged via Indictment with firearms-related offenses associated with the events on or around May 29, 2016. *See* Indictment, ECF No. 1. On April 11, 2017, the Government filed a Superseding Indictment adding Parrish Valentine as a Co-Defendant. *See* Sup. Indictment, ECF No. 10. During a change of plea hearing before Judge Lawrence F. Stengel, District Court Judge for the Eastern District of Pennsylvania, Prim entered a plea of guilty to the following counts:

Count I: Theft of a firearm and aiding and abetting;[1]

Count II: Possession of a stolen firearm and aiding and abetting;[2] and

Count III: Felon in possession of a firearm.[3]

*See* Guilty Plea Ag. ¶ 1, ECF No 3.

---

[1] 18 U.S.C. §§ 922(u) and 2.
[2] 18 U.S.C. §§ 922(j) and 2.
[3] 18 U.S.C. § 922(g)(1).

Thereafter, on April 9, 2018, Prim was sentenced to 188 months' imprisonment. *See* Minutes, ECF No. 50. On April 12, 2018, Prim filed a pro se appeal of his sentence. *See* Notice of App., ECF No. 52. On appeal, the Government filled a Motion for Summary Affirmance of Prim's sentence in light of the appellate waiver Prim signed as part of his guilty plea, and the Third Circuit granted the motion. *See* USCA Order, ECF No. 70.

On June 18, 2020, in light of the COVID-19 pandemic, Prim filed his first Motion for Compassionate Release. *See* First Comp. Release Mot., ECF No. 73. This Court dismissed Prim's first motion on procedural grounds.[4] *See* Order 9/21/2020, ECF No. 76. On March 4, 2021, Prim filed the present Motion for Compassionate Release. *See* Mot., ECF No. 79. On March 18, 2021, the Government responded, opposing the motion. *See* Resp., ECF No. 81. On April 12, 2021, Prim filed a reply to the Government's response. *See* Reply, ECF No. 85.

## III. LEGAL STANDARDS

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[5] This section dictates that the defendant must first move for compassionate release with the BOP, which then has thirty days to consider the request. *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risks COVID-19 poses in the federal prison system do not excuse the exhaustion requirement).

---

[4] To the extent this Court construed Prim's request as one for home confinement under the CARES Act, this Court was without jurisdiction to review the decision of the Bureau of Prisons. *See* Order 9/21/2020. To the extent this Court construed Prim's request as one for compassionate release under the First Step Act, Prim had not shown exhaustion of his claims insofar as he did not allege that he ever petitioned the warden for compassionate release prior to seeking judicial intervention. *See id.*

[5] Section 3582(c) is actually part of the Sentencing Reform Act of 1984 ("SRA"), but was amended by the First Step Act to provide prisoners a more direct route to court for their claims. *See United States v. Torres*, No. 18-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020).

Once a defendant satisfies the exhaustion requirement, the court may reduce a term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Section 1B1.13 of the United States Sentencing Guidelines provides that the court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A), "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [] the reduction is consistent with this policy statement." 18 U.S.C. Appx. § 1B1.13; *see also United States v. Williams*, No. 15-471-3, 2020 WL 4756743, at *4 (E.D. Pa. Aug. 17, 2020) ("In order to find compelling and extraordinary reasons, the policy statement additionally requires a court to find that a defendant is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)'" (quoting 18 U.S.C. Appx. § 1B1.13(2))).

The Sentencing Commission has identified the medical condition of a defendant as an extraordinary and compelling reason if:

> (i) The defendant is suffering from a terminal illness . . . .
> (ii) The defendant is—
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

18 U.S.C. Appx. § 1B1.13, App. Note 1. However, "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Santiago*, No. 15-280, 2020 WL 4015245, at *3 (E.D. Pa. July 15, 2020). Similarly, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[6] *Raia*, 954 F.3d at 597. Even if a defendant's medical condition is sufficiently severe, the court must still consider the 18 U.S.C. § 3553(a) sentencing factors and whether the defendant is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g). *See also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (holding that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit"). The § 3553(a) sentencing factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

---

[6] *See* BOP, *Updates to BOP COVID-19 Action Plan: Inmate Movement* (Mar. 19, 2020), available at https://www.bop.gov/coronavirus/covid19status.jsp (last visited April 22, 2021); *United States v. McLaughlin*, No. 17-121-2, 2021 WL 620958, at *2-3 (E.D. Pa. Feb. 17, 2021) (summarizing the BOP's response to the coronavirus pandemic); *see also* Resp. 7-9 (same).

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> . . .
>
> [4] the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
>
> . . .

18 U.S.C. § 3553(a).  Section 3142(g) provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>   (2) the weight of the evidence against the person;
>   (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

## IV. DISCUSSION

As a threshold matter, Prim has exhausted his claims.  Prim asserts that he filed a request for compassionate release with the Warden at FCI-Hazelton on or about September 26, 2020.  *See* Mot. 4.  On or about October 16, 2020, the Warden issued a written response, denying Prim's request.  *See id.*  Accordingly, because more than thirty days have passed since Prim's

filing of the request, this Court now has jurisdiction to review the matter. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (per curiam).

Additionally, the Government in its response to Prim's request, concedes that "the defendant's condition of obesity with a BMI of 37.5, which is a certain CDC risk factor, meets that test and permits consideration for compassionate release at this time during the pandemic."[7] *See* Resp. 15.  Thus, this Court turns its attention to whether the policy statements of the United States Sentencing Commission and factors set forth in 18 U.S.C. § 3553(a) warrant a reduction in Prim's sentence.  *See United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2020) (summarily affirming district court's denial of compassionate release for an inmate with medical vulnerability to COVID-19; district court has discretion to weigh § 3553(a) factors and other factors against the medical vulnerability).  After review, both the policy statements and the § 3553(a) factors weigh strongly against a reduction in sentence.  These factors outweigh the gravity of Prim's medical vulnerability to COVID-19.  Accordingly, Prim's request for compassionate release is denied.

**A.     A reduction in sentence is not warranted because Prim poses a danger to the community if released.**

A court reviewing an inmate's request for compassionate release must address whether release would be consistent with the policy statements of the United States Sentencing Commission.  *See Williams*, 2020 WL 4756743, at *4.  Accordingly, this Court must determine whether Prim would pose a danger to any other person or the community if released.  *See id.*

---

[7]    The Court notes, however, that as of April 21, 2021, 369 staff members and 1140 inmates have been fully inoculated at the Hazelton Federal Correctional Complex, which is comprised of both FCI Hazelton and USP Hazelton.  *See COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 22, 2021).

As described above, Prim plead guilty to one count of theft of a firearm and aiding and abetting, one count of possession of a stolen firearm and aiding and abetting, and one count of felon in possession of a firearm. These convictions arose from Prim's burglary of a firearms store with the help of two accomplices. On their face, these offenses are patently dangerous to the community. Indeed, the sentencing Judge, The Honorable Lawrence J. Stengel, remarked on the dangerous nature of Prim's offenses. Judge Stengel recorded his concern over

> the distribution of these firearms in our communities. And the absolute, absolute lack of concern for the well-being and safety of others, in fact, this defendant took these guns so that they could be used on others -- those others being his enemies and the enemies of his brother. So this is disgusting, it's dangerous, it's highly criminal and it's about as bad as it gets in this courthouse. . . . They broke in and took not one, not two . . . but nine guns so they could distribute that out in what is already a very dangerous world . . . .

*See* Sent. N.T. 76:1-8, 15-18. Prim "has been a threat to any community within which he lives . . . ." *See id.* at 78:20-21.

Troublingly, Prim's present offenses are just the most recent in a long history of dangerous criminal offenses. As the Government recounts from the Presentence Report, Prim's criminal history began as early as 2005, when Prim was only 17 years old. *See* Resp. 4 (citing Presentence Report (PSR) ¶ 47). At that time, Prim was convicted of possession with intent to distribute crack cocaine. *See id.* In 2008, Prim was convicted of being a felon in possession of a stolen handgun, an offense that occurred while Prim was on probation for his 2005 offense. *See id.* (citing PSR ¶ 48). Again in 2008, Prim was convicted of simple possession of marijuana and crack cocaine. *See id.* (citing PSR ¶ 49). In 2013, Prim was convicted of simple possession of oxycodone and synthetic marijuana, another offense that occurred during a period of supervision. *See id.* (citing PSR ¶ 50). In 2015, Prim was convicted of brandishing a firearm and assault and

battery. *See id.* (citing PSR ¶¶ 51-52). Just three weeks after his release from prison for the 2015 offenses, Prim committed the instant firearms-related offenses. *See id.* (citing PSR ¶ 54).

Prim's criminal history shows longstanding disregard for the law as well as a troubling pattern of increasingly serious offenses. What began as mostly drug possession offenses quickly became possession of stolen firearms, assault and battery, brandishing a firearm, and theft of firearms. Many if not all of these offenses present a danger to the community in which they occur.

In light of the length and breadth of Prim's criminal history and the seriousness of the present offenses, this Court "cannot confidently conclude that Defendant will not commit similar offenses which will endanger the community if he is released." *See United States v. Brinson*, Crim. No. 15-87, 2020 WL 4736258, at *5 (W.D. Pa. Aug. 14, 2020). The fact that Prim was on supervision during the commission of some of these offenses further supports the likelihood that Prim will again place the community in danger by engaging in the sort of criminal conduct at issue here. *See United States v. Irizzary*, Crim. No. 14-652-13, 2021 WL 735779, at *9 (E.D. Pa. Feb. 25, 2021). Despite Prim's prior terms of incarceration and supervision, he continues to engage in dangerous criminal activity. *See, e.g.*, *United States v. Council*, No. 4:18-CR-00219, 2020 WL 5215142, at *5 (M.D. Pa. Sept. 1, 2020) (concluding defendant, who was not deterred by lengthy sentences for prior criminal conduct, presents a danger to the community if released).

Accordingly, Prim poses a danger to the community if released and therefore, a reduction in sentence would be inconsistent with the policy statements issued by the United States Sentencing Commission.

**B.     The factors set forth in 18 U.S.C. § 3553(a) do not support a reduction in Prim's sentence.**

For many of the reasons explained above, a reduction in sentence is similarly not warranted by the § 3553(a) factors.  Beginning with the nature and circumstances of the offenses, the instant offenses are, in the words of the sentencing Judge, "dangerous, . . . highly criminal and [] about as bad as it gets in this courthouse."  *See* Sent. N.T. 76:7-8.  Prim and two accomplices took nine firearms from a gun store.  They then distributed those guns to individuals.  When the police attempted to execute a traffic stop of Prim's vehicle, Prim tossed the stolen firearm out of the car window as he and Griffith fled from the police.  These offenses are incredibly serious, dangerous, and offensive to the safety of any community.

With respect to the characteristics of the Defendant, Prim's record shows that he has been committing crimes—or serving sentences for those crimes—his entire adult life, including some crimes that preceded his adult years.  *See* Resp. 4 (citing PSR ¶¶ 47-52).  As more thoroughly set forth above, Prim has been convicted of a number of felony drug-related, firearm-related, and otherwise violent crimes since 2005.  Moreover, the seriousness of these crimes has only increased, culminating in the highly-dangerous instant offenses.

Additionally, a sentence should be imposed so as to deter future criminal conduct.  Prim committed the instant offenses just three weeks after his release from prison for prior offenses.  It is clear that prior terms of imprisonment and supervision have not sufficiently deterred Prim's willingness to engage in dangerous criminal conduct.  *See Council*, 2020 WL 5215142, at *5.  Notably, a number of his prior offenses were committed while he was under supervision.  *See Irizzary*, 2021 WL 735779, at *9.

A sentence should also promote respect for the law.  Prim's lack of respect for the law is demonstrated through his lengthy criminal record, his commission of crimes while on

supervision, and the severity of the instant offense, which was committed just weeks after his release from prison for a prior offense.

Turning to the types of sentences available, the Guideline Sentencing Range for Prim was between 188 and 235 months' imprisonment. *See* Sent. N.T. 67:2. Prim's sentence of 188 months is at the very bottom of the guideline range. Furthermore, Prim has only served approximately 56 months, or 30%, of his sentence. *See* Resp. 5; *see also, e.g., United States v. Burton*, Crim. No. 15-474-3, 2020 WL 4226472, at *4 (E.D. Pa. July 23, 2020) (denying compassionate release where inmate only served 16 months of a 120-month sentence for serious drug crimes, concluding that a 16-month sentence "for such a serious drug crime would not afford adequate deterrence to the potential criminal conduct of [defendant] in the future."). Considering the severity of the offenses and Prim's persistence in criminal activity over a decade, a sentence of only 56 months would not be appropriate in light of the factors set forth in § 3553(a).

The § 3553(a) factors strongly weigh against any reduction in Prim's sentence. Considering the violent and dangerous nature of the instant offense, Prim's extensive criminal history, Prim's lack of respect for the law, the danger Prim poses to the community, and the fact that Prim has only served a third of his sentence, the § 3553(a) factors support a denial of Prim's request for compassionate release.

V. **CONCLUSION**

Although Prim exhausted his compassionate release claim with the Bureau of Prisons and set forth a qualifying medical condition, the policy statements of the United States Sentencing Commission and § 3553(a) factors weigh heavily against any reduction in Prim's sentence. As evidenced through his criminal history and the instant offense, Prim poses a significant danger to

the community if released.  On balance, the factors weigh heavily against Prim's release. Accordingly, Prim's request for compassionate release is denied.

    A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge